UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> RAYMONE KELLEY, ) <br> ) <br> Defendant. ) | Criminal Action No. 2: 12-016-DCR <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Raymone Kelley is currently serving a 92-month sentence of imprisonment for violating 18 U.S.C. § 922(g)(1), which makes it a crime for a convicted felon to possess a firearm. [Record No. 37] Kelley was sentenced on April 29, 2013, and he is expected to be released on September 19, 2024.[1] [*Id.*] He has now filed a motion seeking compassionate release or a sentence reduction pursuant to 18 U.S.C. § 3582(c). [Record No. 64] In support, Kelley documents extensive efforts at rehabilitation while imprisoned. He further contends that his current medical conditions place him at a high risk of severe COVID-19 infection. [*Id.* at pp. 4-5, 9] Kelley's motion will be denied because has not demonstrated that extraordinary and compelling reasons justify release, or that the relevant sentencing factors support a sentence reduction.

---

[1]   *See Find an Inmate*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/inmateloc/ (last visited March 10, 2021). Kelley's sentence was to run consecutively with a sentence for an unrelated Ohio state conviction. [Record No. 37]

Kelley was arrested for wanton endangerment after officers responded to a report of shots fired at his girlfriend's apartment. Officers discovered spent shotgun rounds outside of the apartment and a sawed-off shotgun inside. A search was performed, resulting in the discovery of ammunition from another firearm. Two children were inside the apartment at the time of the offense, and Kelley reported to officers that he was responsible for the children while his girlfriend was at a hospital having a baby. Kelley was ultimately charged with violating 18 U.S.C. § 922(g)(1) based on a prior Ohio felony conviction.

Despite being only 25 years old at the time of his sentencing, Kelley had amassed a lengthy criminal history. Beginning at the age of 15 and continuing until the instant offense, he committed various crimes involving drugs, firearms, excessive use of alcohol, and robbery. This activity placed him in the highest criminal history category under the sentencing guidelines. During the sentencing hearing, the undersigned noted that Kelley's criminal history "more sadden[ed] the Court than anything else with an individual at this young age." [Record No. 45, p. 30] His guidelines range was 92 to 115 months, but the undersigned imposed a sentence at the bottom of that range to run consecutively with the undischarged portion of an eight-year term of imprisonment related to a robbery conviction. [*Id.* at p. 33]

Section 3582(c) allows a court to modify a term of imprisonment where, as relevant here,

> after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, [and] after considering the factors set forth in section 3553(a) to the extent that they are applicable, [the Court] finds that--(i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C.A. § 3582(c)(1)(A). However, when a defendant satisfies the exhaustion requirement, as Kelley has here,[2] a court "face[s] two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2) whether the applicable § 3553(a) factors warrant such a reduction." *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021).

In answering the first question, courts previously looked to the policy statements contained in United States Sentencing Guideline § 1B1.13, which define extraordinary and compelling circumstances for a sentence reduction. The policy statements were promulgated under a statutory framework that did not contemplate prisoner-filed motions under section 3582. *See United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020) ("The First Step Act of 2018[] . . . allow[s] incarcerated persons to file their own § 3582(c)(1)(A) motions."). But following amendments to section 3582, "it has now been established that § 1B1.13 does not apply to defendant-brought motions for compassionate release." *United States v. Sorrell*, --- F.3d ---, No. 20-1832, 2021 WL 807867, at *1 (6th Cir. Mar. 3, 2021).

The upshot is that courts "have discretion to define 'extraordinary and compelling' on their own initiative." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). In doing so, the Court may "permissively consider [the policy statements] as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release." *United States v. Tomes*, --- F. App'x ---, No. 20-6056, 2021 WL 868555, at *2 n.1 (6th Cir. Mar. 9, 2021). In previous cases, this Court has utilized the policy statements' framework for analyzing a prisoner's grounds for relief, while not constraining its analysis to the categories

---

[2] Kelley requested a sentence reduction from his facility on July 26, 2020. [Record No. 64-1, p. 12] It was denied on September 14, 2020. [*Id.* at p. 13]

listed. *See United States v. Abney*, 2020 WL 7497380, at *2 (E.D. Ky. Dec. 21, 2020); *United States v. Slone*, No. CR 7:12-05-KKC, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (defendant did "not assert that he ha[d] a permanent impairment that ha[d] diminished his ability to provide self-care within the prison environment").

In this case, Kelley contends that his medical condition constitutes an extraordinary and compelling reason for a sentence reduction. [Record No. 64, pp. 6-7] More specifically, he asserts that obesity puts him at risk of a severe COVID-19 infection. [*Id.*] In his words, "if exposed to COVID-19[,] he would be at a[] heightened risk for death." [*Id.* at p. 4] Kelley did not provide the Court with medical records confirming that he suffers from obesity, and the Court could deny the motion on this basis. *Elias*, 984 F.3d at 520. But even taking his allegations as true, the undersigned does not find that his legitimate concerns[3] about his medical condition amount to an extraordinary and compelling reason for a sentence reduction.

First, Kelley's circumstances would not entitle him to relief under the nonbinding policy statements. The "medical condition of the defendant" may constitute an extraordinary and compelling reason for a sentence reduction where the defendant is suffering a terminal illness or a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Kelley does not allege anything resembling a debilitating medical condition. The Warden at his facility, in denying Kelley's

---

[3] The Centers for Disease Control and Prevention has identified obesity as a risk factor for severe illness from COVID-19. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions (last visited March 11, 2021).

reduction request, stated that his "last comprehensive medical summary indicates your condition(s) is not to a point where you possess cognitive or physical limitations." [Record No. 64-1, p. 13] And Kelley does not allege that his condition has worsened. Therefore, he has not demonstrated an extraordinary and compelling circumstance as far as the policy statements are concerned.

Next, Kelley has provided any additional reasons that would lead the Court to find that his circumstances justify a sentence reduction. He contends that incarcerated individuals are unable to separate themselves or properly sanitize in compliance with CDC guidelines. [Record No. 64, pp. 7-8] Based on this assertion, he concludes that there "is an emergent need to depopulate confined[,] overfull prisons of non-violent offenders with his medical condition." [*Id.* at p. 8] To the extent Kelley is worried that the safety of inmates is not a priority, he is mistaken. The BOP instituted modified operations in an effort to mitigate the spread of COVID-19 within its facilities.[4] Although these efforts have not been completely successful, the BOP has amended its guidance in response to new information, including recent efforts to begin vaccinating inmates and staff.[5] Thus, while "[t]he Court recognizes that these are unsettling times for prisoners," it does not find that Kelley's dissatisfaction with the BOP's

---

[4]  *See BOP Modified Operations*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited March 11, 2021).

[5]  As of March 11, 2021, over 75,000 doses of vaccine have been administered in BOP facilities. Further, over 200 staff and nearly 350 inmates at FCI Terre Haute, Kelley's facility of residence, have been fully inoculated against the virus. *See BOP COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited March 11, 2021).

At present, two of 898 inmates are positive for the virus at the facility. *See* https://www.bop.gov/coronavirus/index.jsp (last visited March 11, 2021).

response is an extraordinary and compelling reason for a sentence reduction. *United States v. Zavala-Romero*, No. CR 5:19-40-KKC, 2020 WL 4282241, at *3 (E.D. Ky. July 27, 2020).

But even assuming Kelley had demonstrated a reason for a sentence reduction, it would be wholly unwarranted under the factors listed in 18 U.S.C. § 3553(a). Court have a duty to "consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114-15. "Section 3553(a) blankets a vast terrain of sentencing factors, such as the nature of the offense, the characteristics of the defendant, and numerous penological objectives." *Id.* at 1114.

As mentioned, Kelley relies on a number of positive developments to contend that his personal circumstances have changed while serving his sentence. He provided an extensive list of courses he has taken, as well as clean disciplinary history report. [Record No. 64-1, pp. 9-10] This is all welcome news, but it is insufficient to outweigh the need for the sentence imposed to reflect the seriousness of Kelley's offense. Kelley's history and the circumstance of the offense justify serving the remainder of the sentence. And while he contends that his crime was not violent, it was certainly dangerous. He possessed and discharged a firearm in a residential area while he was looking after children. [*See* Record No. 45, p. 31 ("No one that lives in that area wants to have someone shooting off a gun, . . . especially when you have small children close by.").] Additionally, it remains important to deter others from committing similar acts. And while the undersigned continues to hope that Kelley will "get out of this term of incarceration[,] . . . support his family[,]" and "turn his life around," the sentence imposed remains a necessary element of that recovery.

Accordingly, it is hereby

**ORDERED** that Defendant Raymone Kelley's motion for a sentence reduction or compassionate release [Record No. 64] is **DENIED**.

Dated: March 11, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky